## EX-PARTE BESSIE EVERTS.

### (No. 9,867.)

The defendant, a minor, and her mother, with whom she lived, resided in Dayton, Montgomery county, Ohio. The relator, the father, sued out a writ of *habeas corpus*, from the circuit court of the United Sates, for the southern district of Ohio, sitting in Cincinnati, by which the defendant and her mother were compelled to attend at the sitting of that court. That writ was dismissed; and before the defendant and her mother could return, and while detained here, the relator obtaining an interview with his wife, pretended to be, with a view to an amicable settlement of the controversy, caused a writ of *habeas corpus* to be issued from this court. The parties being served, attended, and an arrangement was then entered into, to extend the time for filing a return to the writ, until the next term—*Held:*

1. That this court had acquired jurisdiction to proceed with the hearing and determination of the controversy.

2. But that, under the circumstances it was a matter of discretion, whether it would proceed in the exercise of its jurisdiction, and would be influenced in that discretion, by a consideration of the rights and interests of the child.

3. That the facts showed an abuse of the process of this court, which should be corrected by dismissing the writ; but without costs, since the day upon which the writ was returnable.

SPECIAL TERM.—On *habeas corpus*.

The facts are sufficiently stated in the decision.

*Tilden, Rairden & Tilden,* for petitioner.

*Wm. Johnston & John Howard,* for respondent.

GHOLSON, J. A writ of *habeas corpus* was issued upon the petition of Truman C. Everts, requiring the sheriff of Hamilton county to take the body of Bessie Everts, and bring her before a judge of this court, and also to summon Eloise M. Everts, who, it was alleged, illegally restrained Bessie Everts of her liberty, to show the cause of her detention. This illegal detention was alleged to be within the city of Cincinnati, and, of course, within the jurisdiction of the judge who granted the writ.

Bessie Everts is a minor of about the age of eight years. The petitioner who, on her behalf, has obtained the writ, is her father, and the party under whose illegal restraint she is alleged to be is her mother. It is one of those unfortunate cases in which a father and mother, who have no other tie to connect them, except a child of tender years, are engaged in a dispute as to its custody. In such a controversy the position of the child is as much entitled to regard as that of either of the parties, and I feel it to be my duty to take care that no right, either of substance or form, which the law may have provided as a guard or protection for the child, shall be infringed.

The matter to be decided is an alleged illegal restraint of the liberty of the child, involving the question of the proper custody. Is this matter one which has a locality and appertains to a particular jurisdiction, or does it follow the persons of the parties contending for the custody? Has the child no interest or concern in the forum which may be selected for that contention?

It has been claimed that, upon an allegation of an illegal detention in Montgomery county, a judge of this court would be authorized to grant a writ of *habeas corpus*. If there be an alleged detention within the jurisdiction of this court, and a writ of *habeas corpus* be awarded, its effect can not be avoided by a removal of the party detained, and, therefore, it may be, that the writ could be directed to the sheriffs of the several counties of the State; but, as at present advised, I should not feel authorized to award a writ upon an allegation of a detention in another jurisdiction. If there be no authority to do this, then it is a right or privilege of parties not to be drawn into a forum which the law has not appointed for the adjudication of questions in which they are interested. This right, or privilege, it may be the duty of the court to protect, and this protection should be extended to every party interested.

A mother may have the right to a custody of the child, even as against a father, and then the child would have a

reciprocal right to the care and protection of that mother. Whether these rights exist, may be a question for legal adjudication. The privilege of the forum to make that adjudication, is, it appears to me, as important to the child as to the mother. If, then, a father or a mother has the actual custody of a child, the jurisdiction in which that custody exists should properly determine whether it should continue or be changed. I can not understand how any other jurisdiction could interfere without a disregard of the rights of the child. Any other conclusion would place the child in the position of a chattel, and its custody would be decided as a question of ownership.

Assuming these principles to be correct, I come to consider the effect of the temporary change of the place of custody, from Montgomery county to the city of Cincinnati, as shown by the facts in this case. It appears that the father, wishing to contest with the mother the right to the custody of the child, obtained a writ of *habeas corpus* from the circuit court of the United States. In obedience to that writ, the mother brought the child from Dayton, her place of residence, to this city. About 11 o'clock in the morning it was decided by the circuit court, that the matter was one not proper for its cognizance, and the proceeding was dismissed. Thereupon, two steps are taken, one by the father and the other by his counsel. The father asks an interview with the mother at a place named, and at the hour of 1 o'clock, P.M., for the purpose of an amicable adjustment of the matter in dispute. This is assented to, and the interview takes place. In the meantime, the counsel, without, as is alleged, the knowledge of the father, prepares a petition for a writ of *habeas corpus*, to be presented to a judge of this court. After the petition is prepared, the father is called out of the room, in which the interview is being had, and his affidavit to the petition obtained. He then returns, and the conference continues, without anything being said as to the contemplated step to obtain another writ of *habeas corpus*. While the parties are conferring together, the

sheriff of the county appears with the writ and takes the child into his custody. No.train of cars, in which the parties could have taken passage for Dayton, left before four o'clock; but, it is alleged, by the mother, that it was her intention to have left, immediately after the decision, in a private conveyance, which intention was only abandoned to yield to the request for an interview. The next day the child was brought into court, and, by an arrangement under its sanction, was placed in the custody of the mother and Fielding Lowry, who entered into a recognizance. The time for making a return to the *habeas corpus* was extended to the present term of the court. Now the parties appear and interpose an objection to the exercise of jurisdiction, under the writ of *habeas corpus*, by a judge of this court.

In some States the privilege of not being sued out of the county of their residence, is secured to citizens in the shape of a personal immunity. In this State any such exemption is rather dependent on the nature of the cause of action. If, in this case, the mother had voluntarily brought the child to this city, I see no reason to question the propriety of instituting a proceeding, by writ of *habeas corpus*, to determine as to her right to its custody, before a judge of this court. The difficulty to be encountered arises from the mode taken to bring the mother and child within the locality over which the jurisdiction extended, and from the circumstances under which they were detained within that locality, when they might have departed.

A citizen of another State, having a controversy with a citizen of this State, at least as to many matters, may elect his forum; he may require the controversy to be decided in a court of the United States, or in a State court. In this respect, as a defendant, his privilege is peculiar, and is not enjoyed by a citizen of the State. Such a privilege has ever been deemed important, and is secured by direct legislation. A citizen of another State does not, therefore, stand in a position in which he can claim any favor, which interferes with a privilege of being sued within a particular jurisdiction,

which has been secured to the citizens of this State.  He is enabled to do that by reason of his privilege of suing in a court of the United States, which a citizen of this State can not do, viz: compel those with whom he has a controversy, to leave the county of their residence, and attend at the place in which the court of the United States is held.  It is quite certain that this privilege of the citizen of another State, secured by the constitution and laws of the United States, was never intended to be used as a means or pretense to interfere with a privilege secured by the laws of a State, to its own citizens of being sued within a particular State jurisdiction.  The courts of the State can not properly permit it to be so used, and when the process of a court of a State is employed for such a purpose it may very justly be regarded as an abuse of such process.  Every court must have, and, in a proper case, should exercise such a power over its process as to prevent its being used for purposes of wrong and injustice.  16 M. & W. 822; 7 Id. 502; 2 Howard, S. C. 65; 78 E. C. L. 401.

It must be observed that this is not a case in which it can be properly said there was no jurisdiction : the actual presence of the parties was sufficient.  The granting of the writ was a matter of course upon a general statement of an illegal detention.  Its service within the jurisdiction requires and authorizes me to proceed with the inquiry as to the matters in dispute, unless some reason be shown why jurisdiction thus obtained should not be exercised.  It is a question, therefore, not of the want, but of the exercise of jurisdiction.  When the exercise of jurisdiction depends upon an inquiry into an abuse of the process of a court, the result must be very much governed by the particular circumstances.  The abuse claimed to have occurred must be clearly established, and must involve an act of force, fraud or wrong, on the part of him who has employed the process in a manner technically regular, or a clear violation of some right of the other party, by which an exemption from the

process, either generally or under the circumstances, existed.

I am not aware of any law of the State, or of any practice, which would authorize me to enter into an inquiry as to any privilege protecting the parties in this case, as suitors in the court of the United States. It will be the better rule to consider such a privilege as that of the court, and not of the party, and, therefore, the allowing or not allowing the privilege to be discretionary with that court. *Magay* v. *Burt*, 48 E. C. L.; 5 Q. B. 393; *Cameron* v. *Lightfoot*, 2 W. Bl. 1,190. It is neither proper nor necessary that this court should guard and protect the privileges of the circuit court of the United States: that court has ample means and power, which, in any proper case, will, doubtless, be exercised, to protect its own privileges.

Nor am I prepared to admit that the being required to attend the court of the United States, held in this city, would preclude or prevent a service of process from this court on parties so attending. Even where they were wrongfully sued, and thereby compelled to be present in this city, it would not follow that there was an exemption from service of process, which it would be the duty of this court to regard. I incline to think the same principle which governs, as decided in England, in cases of arrest, must apply. " An illegal arrest will not protect a man against all his other creditors; but he must still be amenable to law, unless some privity or collusion be shown." *Howson* v. *Walker*, 2 W. Bl. 823; *Robinson* v. *Yewens*, 5 M. & W. 148; 59 E. C. L. 552, *Hooper* v. *Lane*. But it has also been decided that a party while under an illegal arrest, can not be lawfully arrested by the same plaintiff who has caused the illegal arrest. It will be sufficient to authorize a discharge where the first arrest was illegal by the wrongful act of the party making the second; and it has been held that where a sheriff, having in his hands a legal and illegal writ, makes his arrest under the latter, there can be no detainer under the former. The party having been arrested illegally, by the wrongful act of

the sheriff, it can not be made available, for the purpose of a detainer under legal process. *Barratt* v. *Price*, 9 Bingh. 566, 23 E. C. L. 384; *Hooper* v. *Lane*, 59 E. C. L. 546–550; 6 Ho. L. Cas. 443.

The rule is placed on a broad ground, that if the party has been unlawfully deprived of liberty, advantage shall not be taken of the unlawful act to detain him. *Barrack* v. *Newton*, 41 E. C. L.; 1 Q. B. 655–657. The principle has been thus expressed: " The author of wrong, who has put a person in a position in which he had no right to put him, shall not take advantage of that illegal act. " 4 My. & Cr. 280, 281; 1 Hare, 299; 1 Bevan, 79; Cr. & Phill. 264. It is an application of the general maxim, that no man shall take advantage of his own wrong. " No party," it has been said, " can take advantage even of his ignorance where it was his duty to have knowledge, or of his negligence and still less, undoubtedly, of his fraud." 2 Cl. & Fin. 102, 183, *Bulkley* v. *Wilson.*

There can, I think, be no doubt but that the same principle applies in the case of the service of summons, where the effect is to deprive the defendant of a right or privilege. It is not necessary there should be an arrest, though it may also be said, at least so far as the child is concerned, personal liberty is involved in this case—a point to which I shall have occasion to advert in another connection. The point of difficulty is, whether, in the conduct of the party availing himself of the process of the court, there has been that description of wrong or illegality which will bring the case within the operation of the rule? This is to be determined from the circumstances of the case. I have no doubt there may be cases in which one party, having sued another in the court of the United States, and having thus brought him within the jurisdiction of this court, might, on the failure of his suit, properly be allowed to bring another in this court. In the absence of intentional wrong, there should, at least, appear substantial prejudice. In many cases there is no substantial ground for preference between one State court

and another.  If an undisputed debt is to be collected, a man would hardly be heard to say he preferred that a judgment should be rendered against him in Dayton rather than in Cincinnati.  But there are cases in which, as before remarked, it may be a matter of importance, and where the right should be protected.

In this case the parties were brought to Cincinnati under a proceeding in the court of the United States, which that court refused to entertain.  Looking at all the circumstances, I feel bound to find that there was, on the part of the petitioner, a conscious violation of the right of the other parties, which, but for their presence so procured in Cincinnati, they would have had to have been proceeded against only in Montgomery county.  The object and intent of the resort to a judge of this court, was not *simply* to contest the right to the custody of the child, but also to deprive the parties of their right to another forum, to which, but for his own act, they would have been entitled.  This, I have no hesitation in saying, is an act accompanying the exercise of a right of suing in the courts of the United States, which a State court ought not to permit.  It is an advantage which would be improperly gained, and the State court, whose process is used for the purpose, should not allow such an advantage to be retained.

There is still, however, another point in this case of considerable difficulty.  It has been strongly claimed, and ably argued, that the objection to the exercise of jurisdiction has been waived.  This is not, as argued on the other side, a case in which consent might not give jurisdiction—for, as before shown, there is jurisdiction—the only question being one of discretion as to its exercise.  The objection ought, undoubtedly, to have been taken promptly, and the acts of waiver in this case, if judged by analogous acts of waiver in ordinary cases, would be a sufficient answer.  Their effect can be only avoided by the peculiar nature and circumstances of the case.

There are cases in which it has been held, that where per-

sonal liberty is in question, facts which would amount to a waiver under other circumstances, will not be given that effect. 4 Phill. 744. I am disposed to apply a like principle in this case. The child, as before shown, must be deemed to have an interest in the question as to the forum which is to decide the contest for its custody. I do not think the petitioner has a right to claim that any privilege in this respect, which the law has secured to the child, has been lost by the steps taken in this case. This conclusion has been the more readily reached, from the consideration that those steps were induced by the natural anxiety of the mother to return to her home and friends, and that the circumstances by which they were attended prevented that deliberate and careful examination into the effect they might possibly have, which would otherwise have been made.

After a full consideration of the circumstances of this case, I feel bound to decline the exercise of any jurisdiction in the matter; and the writ will, therefore, be discharged; but no costs will be allowed which have accrued since the day upon which the writ was made returnable.

Writ discharged.